## The Venetian.[1]

## The Revere.

(*District Court, D. Massachusetts.*  December 28, 1886.)

1. COLLISION—STEAMER AND FERRY-BOAT—CROSSING AND FOLLOWING VESSEL DISTINGUISHED—FAILURE TO SIGNAL.

    The ferry-boat R. started out of her slip when the steamer V. was directly opposite. The speed of the steamer had been checked by the stopping of her engines, but her headway had not entirely ceased. Her ability to maneuver was further diminished by the presence, close aboard, of one or more vessels which it was her duty to keep clear of. When the ferry-boat started out of her slip, her bow was pointing astern of the steamer. When clear of the slip she proceeded to cross the steamer's bows in a circling course, at full speed. With the exception of the starting whistle of the ferry-boat, no signal was made by either vessel. Both vessels, when a collision became imminent, endeavored to avoid it by reversing their engines. *Held*, that the steamer had done all that devolved upon her under the circumstances; that, as the ferry-boat was a following vessel when the situation first opened, the steamer was not bound to foresee that, by a violation of the rules of the road, the ferry-boat would become a crossing vessel; and that no duty to signal the latter as a crossing vessel devolved upon the former.

2. SAME—STEAMER AND FERRY-BOAT.

    A ferry-boat must not cross a steamer's path, when the latter is abreast of her slip, and is hampered in her ability to maneuver. If, upon starting out of the slip, the ferry-boat's bow is astern of the steamer, and if she subsequently crosses the bows of the latter vessel, she will be considered as a following, not as a crossing, vessel.

Collision.  Cross libels.

*L. S. Dabney,* for the Venetian.

*T. M. Babson,* for the Revere.

NELSON, J.  These cases were cross-libels for a collision between the British steam-ship Venetian, of the Leyland line, and the steam ferry-boat Revere, owned by the city of Boston, and employed on the East Boston ferry, of which the city is the proprietor.  The Venetian arrived in Boston on the morning of March 25, 1886, from Liverpool.  At half past 6 A. M. she was proceeding up the channel, between Boston and East Boston, in charge of a pilot, on the way to her dock in Charlestown.  Her course lay on the starboard or East Boston side of the channel.  Her speed through the water, against an ebb-tide, was then about four knots.  When abreast of the Elevator dock, which is the third dock below the ferry slip, on the East Boston side, her engines were stopped, and, by the time she was opposite the ferry slip, she was moving slowly, though her motion ahead had not entirely ceased.  Another ferry-boat had just before crossed her bow, coming from the Boston side.  A ship also lay at anchor in the channel within a hundred feet of her, on her port bow.  While she was in this position, just opposite the East Boston ferry slip, the Revere started out of the slip on a trip across the

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

channel to Boston, headed down stream, with her bow pointing astern of the Venetian. As soon as she was clear of the slip, her wheel was put hard a-port, a full head of steam was let on, and she proceeded at full speed up stream, in a circling course, directly across the bows of the Venetian. The instant those in charge of the Venetian saw what she was about, the engines were reversed full speed. The Revere also, when within a few feet of the Venetian, reversed. This was done, however, too late to prevent the accident. The forward port-guard of the Revere struck the Venetian on the starboard bow, and in the collision the guard and upper works of the former were torn away, and the iron plates of the latter's hull broken in. The weather was clear and still. The Venetian could not have been more than 500 feet from the ferry slip when the collision occurred, and was probably nearer. Neither vessel sounded any whistle, except that the Revere gave her starting whistle.

Upon these facts, which are abundantly proved by the evidence, the culpability of the Revere is too obvious to require comment. She ran into the Venetian without the slightest necessity or excuse, when the latter was in a position where she had a right to be, and could do nothing to get out of the way. The master of the Revere states that when he started out, the Venetian was opposite the Elevator dock, 900 feet below the slip, and seemed to be stopped; that as he proceeded he saw that she was moving slowly, but supposed he had sufficient room to pass her; and that she suddenly increased her speed, and ran across his bows. Other witnesses called by the Revere give the same account of the accident. That they are mistaken is showed by all the probabilities of the case. The point off the Elevator dock, where the master of the Revere says he saw the Venetian apparently stopped, was at least 1,000 feet below the place of collision. The tide was about half ebb. The Venetian was a screw steam-ship of 2,733 tons register, 435 feet long, and loaded with cargo. It is incredible that such a ship, in the situation described by this witness, could have increased her speed so as to pass over a space of 1,000 feet, against the tide, while the light side-wheel ferry-boat, quickly started and of high speed, under full steam, was going a distance of 500 feet across the tide. The extreme unlikelihood of this theory tends strongly to confirm the testimony of the master and pilot of the Venetian, and of others on board, who all agree that the steam-ship was going slowly past the ferry slip as the Revere came out.

The theory of the ferry-boat's defense is that she was a crossing vessel, and, being on the starboard side of the Venetian, had the right of way. Supposing this to be so, it would not afford an excuse for her not sooner stopping and reversing, though it would condemn the Venetian also. But the fact seems to be wholly different. The Revere was not a crossing vessel, but a following one, when the situation first opened. The Venetian was not bound to foresee that the Revere was about to change the situation in violation of the sailing rules. She did see all that her position rendered it possible for her to do in reversing her engines. For the same reason the complaint of the Revere that the Venetian gave no signal is not well grounded. There was no occasion for a signal from

the Venetian, the Revere having made the collision inevitable by her own misconduct. The Revere must be held solely responsible.

The libel of the city of Boston will be dismissed, with costs; and, in that of the owner of the Venetian, an interlocutory decree will be entered for the libelant. Ordered accordingly.